### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

TAMERA GOERS and ASHLEY
CRISTINE MULLIGAN, individually,
and on behalf of all others similarly
situated

      Plaintiffs,

v.                                                   Case No:  2:15-cv-412-FtM-99CM

L.A. ENTERTAINMENT GROUP,
INC. and AMER SALAMEH,

      Defendants.

_____

### ORDER

      This matter comes before the Court upon review of Plaintiffs' Motion for Sanctions and/or Motion to Compel and Legal Memorandum in Support (Doc. 121, the "instant motion") filed on February 17, 2017, Defendants' response in opposition (Doc. 123) filed on March 6, 2017, and Plaintiffs' reply (Doc. 126) filed on March 27, 2017.  The Court also considers Plaintiffs' Motion for Leave to Present Oral Arguments on Plaintiffs' Motion for Sanctions and/or Motion to Compel and Legal Memorandum in Support (Doc. 150), and Defendants' response thereto (Doc. 154). For the reasons discussed below, Plaintiffs' motions are due to be denied.

### I.   Background

      On July 8, 2015, Plaintiffs Tamara Goers and Ashley Cristine Mulligan filed a three count Class/Collective Action Complaint against Defendants L.A. Entertainment Group, Inc. ("L.A. Entertainment") and Amer Salameh. Doc. 1.

Plaintiffs allege that Defendants operate an adult entertainment club in Fort Myers, Florida under the name of "Babes."   Doc. 1 ¶ 55.   Plaintiffs are former exotic entertainers of Babes who claim that Defendants have a longstanding policy of misclassifying their employees as independent contractors and requiring them to work as exotic dancers for up to and in excess of forty (40) hours per week without compensating them the applicable minimum and overtime rates.   *Id.* ¶¶ 2, 3. Plaintiffs' only compensation was in the form of tips from Babes patrons.   *Id.* ¶ 3. Counts I and II allege violations of the Fair Labor Standards Act ("FLSA"); Count III alleges violation of the Article X, Section 24, of the Florida Constitution for failure to pay Florida minimum wages.   *Id.* ¶¶ 83-85, 93-102.

On September 17, 2015, the Court entered a FLSA Scheduling Order directing Defendants to produce "[a]ll time sheets and payroll records in Defendant's possession, custody or control that pertain to work performed by Plaintiff[s] during the time period for which Plaintiff[s] claims unpaid wages."   Doc. 26 ¶ 1.   Moreover, the Order directed that in collective action cases, "[s]aid exchange of documents shall occur within twenty-one (21) days of [the opt-in Plaintiffs'] filing of opt-in notices with this Court."   *Id.* ¶ 3.   The following month, on October 21, 2015, Defendants' counsel e-mailed Plaintiffs' counsel stating that because Defendants "classified the entertainers as independent contractors and they worked exclusively for tips," Defendants did not have any time records or payroll records to produce."   Doc. 41 at 3.

On December 21, 2015, Plaintiffs served their First Request for Production upon Defendants.   Doc. 121-1.   Plaintiffs have summarized the requests as seeking

> the production of all personnel records and records used to track or document the number of days and the specific days worked by Plaintiffs (Request 1), any applications submitted by Plaintiffs (Request. 7); any rules that applied to dancer/entertainers (Request 10 and 15); copies of all licenses of entertainers who rendered services from July 8, 2010 to present (Request 11); any listing containing the names of dancers from July 8, 2010 to present (Request 17); and, any and all applications for employment submitted by a dancer from July 8, 2010 to present (Request 18).

Doc. 121 at 2-3; *see also* Doc. 121-1.[1]   On February 10, 2016, Defendants responded to Plaintiffs' First Request for Production.   Doc. 121-2.

In their responses, Defendants stated that they classified Plaintiffs as independent contractors, and the only records maintained by Defendants for entertainers are some applications and licenses for current entertainers.   Doc. 121-2 at 1.   Defendants stated that each "Adult Entertainment License" is returned to the city when the entertainer no longer provides services.   *Id.* at 3.   Defendants also stated that they were seeking to locate the applications for Plaintiffs, but were unable to locate same.   *Id.* at 1.   Defendants denied having any rules that they promulgated to apply to entertainers.   *Id.* at 3.   Regarding the request seeking a

---

[1] Plaintiffs are reminded of the proper filing of a motion to compel discovery under the Federal Rules of Civil Procedure.   *See* M.D. Fla. R. 3.04(a) ("A motion to compel discovery pursuant to Rule 36 or Rule 37, Fed.R.Civ.P., shall include quotation in full of each interrogatory, question on deposition, request for admission, or request for production to which the motion is addressed; each of which shall be followed immediately by quotation in full of the objection and grounds therefor as stated by the opposing party; or the answer or response which is asserted to be insufficient, immediately followed by a statement of the reason the motion should be granted.").   Nonetheless, the Court will consider the motion on the merits.

listing containing the names of entertainers, Defendants responded that they "do not have any such listing. Defendants do have some applications of entertainers, and [do] have licenses for current entertainers."   *Id.* at 4.   Lastly, Defendants objected to Request No. 18 seeking applications for employment submitted by entertainers "from July 8, 2010 to present" on the basis that the request is overly broad in that "the Court has not granted collective or class action status."   *Id.*

On August 25, 2016, the Court granted Plaintiffs' motion for conditional certification, and ordered Defendants to produce to Plaintiffs' counsel, "a list containing the full names, stage names, job titles, last known addresses, personal email addresses, telephone numbers, dates of birth, and dates of employment for all putative class members who worked as entertainers for Defendants during the three years preceding the date of compliance."   Doc. 72 at 8.   Plaintiffs state that the following month, on or about September 20, 2016, Defendants provided a list of 156 entertainers without any email addresses.   Doc. 121 at 2.

On August 11, 2016, noticed the deposition of the corporate representative of Defendant L.A. Entertainment corporate representative to occur, and specified twenty-six areas of inquiry in the notice.   *Id.* at 3.   L.A. Entertainment produced Amer Salameh as its corporate representative; however, Mr. Salameh was unable to answer many of the areas of inquiry listed in the notice.   *Id.* at 3-5.   Plaintiffs state Defendants agreed to produce Babes' managers, Jose Torres and Steve Salameh, as fact witnesses; however, both witnesses failed to appear at two of their scheduled depositions.   *Id.* at 5-8.

Plaintiffs filed the instant motion alleging that Defendants failed to comply with the Court's FLSA Scheduling Order, failed to respond to Plaintiffs' First Request for Production upon Defendants, failed to produce a corporate representative knowledgeable on the areas of inquiry specified in Plaintiffs' Notice of Deposition, and engaged in spoliation of evidence. *Id.* at 1-15. Although Plaintiffs have titled their motion as "Motion for Sanctions *and/or Motion to Compel*" (Doc. 121 at 1, emphasis added), the entirety of their argument is dedicated to seeking sanctions. *See* Doc. 121. Pursuant to the Court's inherent authority and Rule 37(b), Federal Rules of Civil Procedure, Plaintiffs request default judgment as a sanction against Defendants, and propose various alternative sanctions. *Id.* at 15-17. Plaintiffs' motion largely is premised on a sworn statement by a previous Babes manager, Mike McCarthy, dated September 22, 2016, that Plaintiffs contend contradicts many of Defendants' discovery responses and purports to prove Defendants destroyed evidence relevant to this action. Docs. 121 at 6-7; 93-1.

## II. Discussion

### a. *Plaintiffs' Motion for Sanctions and to Compel Based on Defendants' Discovery Responses and Alleged Failure to Comply with Court Orders*

District courts have broad discretion when managing their cases in order to ensure that the cases move to a timely and orderly conclusion. *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002). In that spirit, on August 1, 2016, the Court entered a Case Management and Scheduling Order ("CMSO"), setting forth a discovery deadline of February 1, 2017. Doc. 68 at 1. In its CMSO, the Court

warned that it "may deny as untimely all motions to compel filed after the discovery deadline."  Doc. 68 at 2.

First, Plaintiffs' motion to compel and for sanctions is untimely.  *Coleman v. Starbucks*, No. 6:14-cv-527-Orl-22TBS, 2015 WL 2449585, at *8 (M.D. Fla. May 22, 2015) ("While there is no local or federal rule setting a precise deadline for the filing of a motion to compel, it is clear that any such motion must be filed within a 'reasonable' time period.") (citation omitted); *Wane v. Loan Corp.*, 926 F. Supp. 2d 1312, 1319 (M.D. Fla. 2013) (denying Rule 37 sanctions of striking the affidavit partly because the plaintiffs did not file a motion to compel when they realized the information was missing).  Here, Plaintiffs received Defendants' responses to the First Request for Production on February 10, 2016 and the McCarthy affidavit was dated September 22, 2016, yet filed the present motion nearly one year later, and after the discovery deadline passed.  Plaintiffs do not explain nor acknowledge the delay in their filing.

By virtue of failing to address a discovery violation when the movant first learns of the issue, a party risks waiving the issue.  *United States v. Stinson*, No. 6:14-cv-1534-Orl-22TBS, 2016 WL 8488241, at *5 (M.D. Fla. Nov. 22, 2016); *see also Coleman*, 2015 WL 2449585, at *8 ("[W]aiver principles apply in the discovery context just as they do in other aspects of litigation.") (citations omitted).  "The court's decision whether or not to find waiver is discretionary."  *Stinson*, 2016 WL 8488241, at *5 (citing *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012)).  In considering the timeliness of a motion to compel or for sanctions, the

Court considers "such factors as when the movant learned of the discovery violation, how long he waited before bringing it to the court's attention, and whether discovery has been completed." *Id.* at *5 (citing *Long v. Howard Univ.*, 561 F. Supp. 2d 85, 91 (D.D.C. 2008)). Here, Plaintiffs received Defendants' discovery responses on February 10, 2016, waited one year to file the instant motion, and filed the motion after the discovery deadline. Similarly, Plaintiffs received Defendants' response related to their obligation under the Court's FLSA Scheduling on October 21, 2015, yet waited over one year to file the instant motion.

Understandably, Plaintiffs rely on the sworn statement of Mr. McCarthy, which was dated September 22, 2016, in filing their motion; however, similarly there is no explanation for the five-month delay. The Court does not expect parties to immediately rush to Court whenever an opposing party fails to properly respond to a discovery request. Instead, the Court expects parties to comply with the obligations of Local Rule 3.01(g) and Federal Rule of Civil Procedure 37(a)(1) to confer in good faith in an effort to resolve the discovery disputes prior to bringing any motions to compel or for sanctions. *See* M.D. Fla. R. 3.01(g); Fed. R. Civ. P. 37(a)(1). The duty to confer requires a good faith conference, which means a substantive discussion in a good faith effort to resolve the dispute without court intervention. Here, however, there is no indication that Plaintiffs' delay was the result of their attempts to comply with their conferral obligations. Any attempts at conferral did not occur until February 9, 2017, after the expiration of the discovery deadline, when Plaintiffs' counsel emailed Defendants' counsel a copy of the instant motion, stating "I assume

you oppose it but am forwarding it to you pursuant to Local Rule 3.01."[2]   Doc. 126-5.

Second, the Court finds that imposition of sanctions under Rule 37(b) of the Federal Rules of Civil Procedure would be improper.   Rule 37(b)(2)(A) provides that if a party fails to obey a discovery order, the court where the action is pending may issue "further just orders" such as:

> . . .
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii)striking pleadings in whole or in part;
>
> . . .
> (vi) rendering a default judgment against the disobedient party.
>
> . . .

Fed. R. Civ. P. 37(b)(2)(A).   Courts enjoy "substantial discretion in deciding whether and how to impose sanctions under Rule 37."   *Chudasama v. Mazda Motor Corp.*, 123 F.3d. 1353, 1366 (11th Cir. 1997) (citation omitted).

As the Eleventh Circuit has noted, "Rule 37, on its face, does not require that a court formally issue an order compelling discovery before sanctions are authorized." *United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1317 (11th Cir. 1997).   The Eleventh Circuit has held, however, that the imposition of the harshest of sanctions, a default judgment, as a sanction for discovery abuse

---

[2] The Court is mindful that on May 9, 2017, the Court *sua sponte* extended all case deadlines, including the discovery deadline, which it extended to June 30, 2017.   This, however, does not excuse Plaintiffs' unreasonable delay in bringing this motion or even attempting to confer until after the expiration of the discovery deadline.

that had not been preceded by a court order or by a motion to compel was improper.
*Id.*

Here, Plaintiffs did not file a motion to compel prior to filing the instant motion.
As noted, the entirety of Plaintiffs' argument is dedicated to seeking sanctions,
primarily the sanction of default judgment.   *See* Doc. 121.   To the extent Plaintiffs
seek sanctions for Defendants' deficient responses to Plaintiffs' First Request for
Production, sanctions would be improper in light of Plaintiffs' failure to precede their
request with a motion to compel.   Indeed, Plaintiffs did not confer with Defendants
or place Defendants on notice of their alleged deficient responses until they emailed
a copy of the instant motion to Defendants' counsel on February 9, 2017.   Doc. 126-
5.

In imposing sanctions under Rule 37, the court may consider "the unsuitability
of another remedy, the intransigence of a party, and the absence of an excuse."
*Watkis v. Payless ShoeSource, Inc.*, 174 F.R.D. 113, 116 (M.D. Fla. 1997).   The
Eleventh Circuit held, however, that "the severe sanction of a dismissal or default
judgment is appropriate only as a last resort, when less drastic sanctions would not
ensure compliance with the court's orders."   *Malautea v. Suzuki Motor Co., Ltd.*, 987
F.2d 1536, 1542 (11th Cir. 1993) (citations omitted).   Hence, "[v]iolation of a
discovery order caused by simple negligence, misunderstanding, or inability to
comply will not justify a Rule 37 default judgment or dismissal."   *Id.* (citation
omitted).   In other words, "[d]ismissal will not be upheld if a party's failure to comply
is due to inability rather than willfulness, bad faith or disregard of responsibilities."

*Aztec Steel Co. v. Florida Steel Corp.*, 691 F.2d 480, 481 (11th Cir. 1982) (citation omitted).   "When a party demonstrates a flagrant disregard for the court and the discovery process, however, dismissal is not an abuse of discretion."   *Id.* (citation omitted).

To the extent Plaintiffs seek sanctions on Defendants' failure to comply with the Court's FLSA Scheduling Order, the Court finds sanctions are unwarranted. Plaintiffs argue that although Defendants claimed they did not have any time records or payroll records of Plaintiffs to produce, Mr. McCarthy stated otherwise.   Doc. 121 at 6-7.   Mr. McCarthy worked for Babes for eight years until he was fired on October 2015 due to a verbal altercation with Defendant Salameh's brother.   Docs. 121 at 6; 93-1 at 4-5.   Mr. McCarthy stated that, during the time he managed Babes, he maintained a daily log with the names of the entertainers who worked and the amount of house fees they paid.   Doc. 93-1 at 23.   Upon questioning of Plaintiffs' counsel whether Mr. McCarthy had given Plaintiffs' counsel come copies of those logs, Mr. McCarthy responded: "Yes, I did make some of the second page, not of the sales, but of the tip out, the ATM, tooters."[3]   *Id.* at 23-24.   Although Plaintiffs state that some of the documents provided by Mr. McCarthy have been filed with this Court (Doc. 121 at 15 n.1), Plaintiffs fail to acknowledge that prior to their filing of the instant motion the Court ordered that the exhibits be stricken.   Doc. 119.   The Court enunciated the specific reasons for striking the exhibits in its Order.   Doc. 119.

---

[3] Mr. McCarthy testified that "[t]ooters are little test tubes. If alcohol doesn't sell, doesn't move very well, they mix it up and make like a fruity little drink, and they'll pour it in there, not a whole lot of alcohol. It was a tray of 32, and the girls would sell them for $3. The club gets 2, they get $1, and then they get tipped on top of that."   Doc. 93-1 at 24.

In a verified affidavit, Defendants' counsel responds that on August 27, 2015, he met with Babes' owner, Mark Salameh, and its manager at the time, Mr. McCarthy, to investigate and determine the nature of any documents possessed by the club.   Doc. 123 at 23.   During that meeting, Mr. McCarthy informed Defendants' counsel that Babes did not have payroll or time records for Plaintiffs or any other dancers because all of the dancers' compensation was derived solely from tips.   *Id.* Defendants respond that the documents to which Plaintiffs refer are neither time nor payroll records, but rather revenue sheets for the club that itemize the revenue earned based on ATM transactions, cigarette sales, alcoholic "tooter" sales, entry fees at the door, and tip outs.   Doc. 123 at 4.   Notably, Defendants also complain that they have been unable to cross-examine Mr. McCarthy on his sworn statement.   *Id.* n.1.   Defendants state Mr. McCarthy's failed to appear at his scheduled deposition on February 1, 2017, yet seventeen days later Plaintiffs filed the instant motion with Mr. McCarthy's one-sided sworn statement as support.   *Id.*

Mr. McCarthy acknowledged that the entertainers did not receive paychecks from the club (Doc. 93-1 at 7), and their sole income came from Babes' customers (Doc. 93-1 at 14-15).   The Court finds that Plaintiffs have not provided any evidence that Defendants improperly withheld timekeeping or payroll records for the Plaintiffs in this action.

Additionally, to the extent Plaintiffs seek sanctions for Defendants' failure to comply with the Court's Order dated August 25, 2016, except for a rote notation that Defendants failed to provide email addresses for the putative class members,

Plaintiffs make no argument that Defendants improperly withheld such information. Doc. 121 at 2.   In a verified response, Defendants' counsel explains that Defendants gathered "every bit of information available in detail in order to identify any possible dancers, their names and birth dates, last known address, stage name, and other information . . . from the City of Fort Myers Police Department public records, which maintains applications for adult entertainment licenses separated by club."   Doc. 123 at 25.   Counsel states that Defendants produced a comprehensive spreadsheet with the information gathered of approximately 151 entertainers of the club during the relevant timeframe, and "Plaintiffs never notified Defendants that the spreadsheet was deficient or that they failed to comply with the Court order."   *Id.* Under these circumstances, the Court finds that sanctions under Rule 37(b)(2) for failure to comply with Court orders are unwarranted.

Third, the Court finds that imposition of sanctions under the Court's inherent power would be improper.   The courts "have inherent power to impose sanctions on parties, lawyers, or both."   *In re Sunshine Jr. Stores, Inc.*, 456 F.3d 1291, 1304 (11th Cir. 2006).   This power derives from the court's needs to manage its own dockets in order to "achieve the orderly and expeditious disposition of cases."   *Id.*   The court's use of the power to sanction "requires a finding of bad faith after the party is afforded a due process opportunity to be heard."   *Boler v. Space Gateway Support Co. LLC,* 290 F. Supp. 2d 1272, 1278 (M.D. Fla., 2003).   The courts find bad faith when a party delays or disrupts the litigation or hampers enforcement of a court order.   *In re Sunshine Jr. Stores*, 456 F.3d at 1304 (finding that the bankruptcy court properly

invoked its inherent power to sanction the party when the party repeatedly failed to respond to court orders and refused to provide discovery pursuant to court orders). Here, upon review of the motions, exhibits, and affidavits, the Court is unable to find bad faith.  Accordingly, the Court declines to impose sanctions under its inherent authority.

      b.  *Plaintiffs' Motion for Sanctions and to Compel Based on Defendants' Alleged Spoliation of Evidence*

Plaintiffs argue that although Defendants' discovery responses stated they were searching for applications of Plaintiffs and other putative collective action members, Mr. McCarthy's affidavit states that Defendants removed the applications from the club and placed them in another building owned by Defendant Salameh. Doc. 121 at 7.   Plaintiffs contend Defendants "destroyed and/or removed" the applications from the club.   *Id.* at 8.   Furthermore, according to Plaintiffs, although "Defendants claimed in response to discovery and in deposition testimony to not have rules by which the entertainers were required to abide . . . they knew those responses to be untrue and that they had destroyed the rules posted in the club after this lawsuit was filed."   *Id.*   Here, with regard to spoliation of evidence claims, the Court finds Plaintiffs' arguments to be disingenuous.

Courts possess inherent power to enter sanctions against a party as punishment for destroying evidence.   As noted by our sister court,

> [s]anctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information. While a litigant is under no duty to keep or retain every

document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

*Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, No. 6:14-cv-533-Orl-31DAB, 2015 WL 403308, at *6 (M.D. Fla. Jan. 28, 2015) (citation omitted).

Mr. McCarthy stated that, since 2008, Babes maintained rules for all the entertainers, and that "the rules would change all the time."   Doc. 93-1 at 22. Specifically, he stated that Babes imposed certain scheduling, dress code, and appearance rules on the entertainers.   For example, in order for the entertainers to be able to work weekends, they were required to also work certain weekdays; the entertainers also were required to "dress formal" and have their hair and nails "done right."   Doc. 93-1 at 8, 10-11.   While working, the entertainers were not allowed to use their cellphones, smoke cigarettes, or chew gum.   *Id.* at 10-11.   Mr. McCarthy testified that the rules about cell phone usage, smoking, and gun chewing were placed in the entertainers' dressing rooms.   *Id.* at 22.

Mr. McCarthy did not specifically testify that any rules were destroyed after the initiation of this lawsuit.   *See* Doc. 93-1.   Mr. McCarthy did testify that after the lawsuit was filed, "a lot of documents" were "moved" next door.   *Id.* at 23. Specifically, the following exchange between Plaintiffs' counsel and Mr. McCarthy occurred:

> Q:   When this lawsuit was filed, did you discover that a lot of documents had been thrown away?
>
> A:   A lot of them had been moved, yes.

Q.      Tell me about that.

A.      I pack ratted a lot of stuff in my office, and Steve had come in and said it was just too cluttery in there and too dusty in there from all the paperwork being in there. And he ordered one of the bar backs to box all of the paperwork up and move it next door.

Q.      What kind of paperwork was it?

A.      Sales from the cash registers, applications, copies of people's driver's licenses.

Q.      Applications of entertainers?

A.      Yes.

*Id.* The foregoing exchange does not indicate that Defendants *destroyed* any documents, as Plaintiffs suggest, but rather moved them next door, to a property co-owned by Defendant Salameh.   *Id.* at 30.   Moreover, Plaintiffs' assertion that Defendants "destroyed" entertainer applications also is incorrect.   *Id.* at 8.   Mr. McCarthy's testimony is not inconsistent with Defendants' assertion in their discovery responses that "Defendants do have some applications of entertainers, and [do] have licenses for current entertainers."   Doc. 121-2 at 4.   Mr. McCarthy merely states that the applications were moved from Babes to "the place that was next door."   Doc. 93-1 at 30.

Defense counsel explains that he met with Mr. McCarthy on August 27, 2015, and Mr. McCarthy represented to counsel that there were no rules posted anywhere in the club that applied to dancers.   Doc. 123 at 23.   Based on Mr. McCarthy's representations and Defendants' own inspection of the club, Defendants served

discovery responses indicating no such rules exist. *Id.* Defendants also point out that Plaintiffs' filing of a one-page document of "Rules" pertain to the club's patrons, and has since been stricken from the docket. *Id.* at 8 n. 7.[4] Because Mr. McCarthy's statement does not support a finding that Defendants destroyed any evidence, the motion for sanctions on the basis of spoliation of evidence is unwarranted.

> c. *Plaintiffs' Motion for Sanctions and to Compel Based on Defendants' Failure to Comply with Rule 30(b)(6) and Failure to Produce Jose Torres and Steve Salameh*

Next, Plaintiffs argue Defendants' corporate representative, Mr. Salameh, was unable to answer many areas of inquiry, and Defendants refused to provide any additional corporate representatives to answer questions on the non-addressed areas. Doc. 121 at 3-5. Defendants respond that its corporate representative diligently prepared for his deposition and testified for approximately five hours about the areas of inquiry. Doc. 123 at 15. Defendants argue that Mr. Salameh was not required to have personal knowledge or the most knowledge of each area of inquiry; but he was selected because he was the most knowledgeable person in multiple areas of inquiry. *Id.* Regarding the other areas of inquiry, Defendants argue that Mr. Salameh prepared himself in anticipation of the deposition. *Id.*

A party "may depose, any person, including a party, without leave of court except as provided in Rule 30(a)(2)." Fed. R. Civ. P. 30(a)(1). If a party names a

---

[4] The page is entitled "Dress Code," and prohibits baggy clothes, headgear, tank tops, white t-shirts, drug related clothing, and warns: "All these rules are at security's discretion and failure to follow these rules will result in immediate ejection from the club and you will lose the privilege to return to babes/blu pole." Doc. 89-1 at 1.

private corporation as the deponent, the named corporation "must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6). The persons designated "must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "The party seeking discovery must describe the matters with reasonable particularity and the responding corporation or entity must produce one or more witnesses who can testify about the corporation's knowledge of the noticed topics." *QBE Ins. Corp. v. Jorda Enterprises, Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012) (citation omitted). Moreover, "[t]he designating party has a duty to designate more than one deponent if necessary to respond to questions on all relevant areas of inquiry listed in the notice." *Id.* (citation omitted). A party's failure to comply with its Rule 30(b)(6) obligations exposes it to various sanctions, including imposition of costs, preclusion of testimony, and entry of default. *Id.* at 690; *see also Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205, 1213 (11th Cir. 2015) (discussing the court's inherent power to impose sanctions *sua sponte* upon a finding of bad faith in meeting Rule 30(b)(6) obligations). Additionally, a party's failure to properly designate a Rule 30(b)(6) witness can be viewed as non-appearance by that party, thus justifying the imposition of sanctions against it. *Id.* Simply, however, because a designee cannot answer every question on a certain topic does not necessarily mean that the corporation failed to meet its Rule 30(b)(6) obligation. *Id.* at 691.

Mr. Salameh testified that he was not the person with "the most knowledge" on certain areas of inquiry, and identified other persons such as bartender or

manager who would have the most knowledge, but he also testified that he received the Notice of Deposition and made a good faith effort to obtain the information to prepare for the deposition. Doc. 96-1 at 13-14. Plaintiffs' questioning of Mr. Salameh in many of the areas of inquiry focused on whether he was the person with "the most knowledge" on each specific area. *See e.g.*, Doc. 96-1 at 27-32. Despite Mr. Salameh's statement in the beginning of his deposition that he prepared himself to discuss the areas of inquiry, Plaintiffs largely rely on the witness' denial of being the person with the most knowledge of specific areas of inquiry in seeking sanctions. A Rule 30(b)(6) witness, however, "need not have personal knowledge of the designated subject matter," nor the most knowledge. *Id.* at 688 (citations omitted). Moreover, Rule 30(b)(6) does not require the designated representative to remember every detail on the topics propounded. *Local Access, LLC v. Peerless Network, Inc.*, No. 614-cv-399-Orl-40TBS, 2016 WL 392569, at *6 (M.D. Fla. Feb. 2, 2016). Indeed, a witness' inability to "answer with the exactitude Plaintiffs desired does not render him unknowledgeable or his testimony unresponsive." *Id.* The Court has reviewed the deposition transcript and finds no sanctionable conduct on the part of Defendants.

Lastly, the Court considers but need not restate the entirety of the parties' contentions regarding the depositions of Jose Torres and Steve Salameh. To summarize, the Court is confronted with two conflicting affidavits by counsel for the parties in this case about whether the depositions of these two witnesses were cancelled pursuant to a mutual agreement, or whether the witnesses failed to appear.

Docs. 123 at 25-26; 126-1 at 2-5. Defendants maintain that the depositions were cancelled with Plaintiffs' agreement. Doc. 123 at 10-13. Plaintiffs maintain otherwise. Doc. 126 at 1-4. Regarding the witnesses' first failure to appear, Plaintiffs' counsel states: "I could see from my communications with defense counsel that he may have believed the depositions of Mr. Torres and Mr. Steve Salameh had been cancelled so I agreed to reschedule their depositions." Doc. 126-1 at 3. Regarding the second scheduled deposition of these witnesses, the parties scheduled them for January 27, 2017, but subsequently agreed to conduct a mediation on the same day. *Id.* at 3-4. Despite agreeing to conduct a mediation during the same time when the depositions were to occur, Plaintiffs' counsel states that he did not agree to cancel the depositions. *Id.* The Court will not undertake the task of interpreting the multiple exchanges of emails and text messages between counsel in determining each counsel's actual meaning behind the written words. *See* Doc. 123 at 29-32, 54-60. The Local Rules provide that "[a]ttorneys and litigants should conduct themselves with civility and in a spirit of cooperation in order to reduce unnecessary cost and delay." M.D. Fla. R. 2.04(h); *see also* Middle District Discovery (20015) at 3 ("Discovery in this district should be practiced with a spirit of cooperation and civility."). The Court expects counsel to cooperate in the discovery process in order to reduce unnecessary cost, delay, and needless court intervention. In that regard, if they have not already done so, the Court orders parties to meet separately to discuss the date and time to schedule the depositions of Jose Torres and Steve Salameh. Should the parties need extra time to conduct these depositions, they may agree to a

short extension of the discovery deadline to accomplish that goal; however, the Court expects that the parties will cooperate amongst themselves and not involve the Court in such small concession.   As officers of the Court, the Court expects no less.

ACCORDINGLY, it is hereby

**ORDERED:**

1.     Plaintiffs' Motion for Sanctions and/or Motion to Compel and Legal Memorandum in Support (Doc. 121) is **DENIED**.

2.     The Court has had the benefit of the motion, response, reply, along with attached exhibits and verified affidavits by counsel for both parties.   Plaintiffs' Motion for Leave to Present Oral Arguments on Plaintiffs' Motion for Sanctions and/or Motion to Compel and Legal Memorandum in Support is **DENIED** as unnecessary.

**DONE** and **ORDERED** in Fort Myers, Florida on this 14th day of June, 2017.

CAROL MIRANDO
United States Magistrate Judge

Copies: Counsel of record